**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WOLF CREEK CONTRACTING COMPANY, LLC,

                    Plaintiff,

v.                                  CIVIL ACTION NO.   2:19-cv-00672

NICHOLAS COUNTY SOLID WASTE AUTHORITY,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Plaintiff/Counterclaim Defendant Wolf Creek Contracting Company, LLC's ("Wolf Creek") Partial Motion to Dismiss Count I and Count II of the Amended Counterclaim.   (ECF No. 30.)   For the reasons more fully discussed below, Wolf Creek's motion is **DENIED**.

*I.    BACKGROUND*

This action arises out of a construction dispute involving a transfer station at a solid waste landfill facility in Calvin, West Virginia.   Wolf Creek is an Ohio limited liability company with its principal place of business in Watertown, Ohio.   (ECF No. 26 at ¶ 3.) Defendant/Counterclaim Plaintiff Nicholas County Solid Waste Authority ("NCSWA") is a solid waste authority within the state of West Virginia, with its principal place of business in Calvin, West Virginia.   (*Id.* at ¶ 2.)   Counterclaim Defendant SureTec Insurance Company ("SureTec") is a Texas corporation with its principal place of business located in Houston, Texas.   (*Id.* at ¶ 5.)

The following facts are drawn from NCSWA's Amended Counterclaim.   On February 28, 2018, NCSWA solicited bids for the construction of a transfer station on its solid waste landfill facility in Calvin, West Virginia.   (*Id.* at ¶ 8.)   Wolf Creek submitted the winning bid, for which it was awarded a contract for the construction of the transfer station.   (*Id.* at ¶ 9.)   On March 15, 2018, Wolf Creek and NCSWA entered into this agreement, under which Wolf Creek agreed to "complete all work on the [transfer station] in accordance with the plans and specification of the Construction Plans and upon the terms and conditions contained in the Contract Documents . . . ." (*Id.* at ¶ 11.)   Under the contract, Wolf Creek consented to substantially completing the construction work on or before August 15, 2018.   (*Id.* at ¶ 12.)

The contract required Wolf Creek to further provide NCSWA "with evidence of performance and labor and material bonds in the full amount of the Project."   (*Id.* at ¶ 13.)   This Performance Bond was to remain in full effect "in the amount of twenty-five percent (25%) of its original amount" during the one-year guarantee period.   (*Id.* at ¶ 16.)   On March 20, 2018, Wolf Creek acquired a Performance Bond from SureTec in the amount of $ 1,650,305.00.   (*Id.* at ¶ 18.) The Performance Bond named NCSWA as the owner, Wolf Creek as the principal, and SureTec as the surety.   (*Id.* at ¶¶ 19–21.)   Under the Performance Bond, Wolf Creek was obligated to "faithfully perform its duties" and to satisfy all claims and demands under the construction contract.   (*Id.* at ¶ 22.)   SureTec was required under the Performance Bond to satisfy Wolf Creek's contractual obligations in the event Wolf Creek defaulted on the contract.   (*Id.* at ¶ 23.)

Sometime after the commencement of construction, "a series of issues arose" during Wolf Creek's performance under the contract.   (*Id.* at ¶ 24.)   By August 15, 2018, Wolf Creek failed to substantially perform its obligations under the contract.   (*Id.* at ¶ 25.)   Then, on November 19,

2

2018, NCSWA and Bays Technical Services, LLC ("Bays Technical") inspected the work on the transfer station. (*Id.* at ¶ 26.) Bays Technical observed "numerous workmanship issues" and incomplete work, which it included in a written report. (*Id.* at ¶¶ 27, 28.) NCSWA sent this report to Wolf Creek "as notice of [Wolf Creek's] default" under the contract. (*Id.* at ¶ 28.) On December 20, 2018, Wolf Creek visited the transfer station and submitted its own comments on the Bays Technical report. (*Id.* at ¶ 29.) The following day, Bays Technical revised its report and provided Wolf Creek with a copy. (*Id.* at ¶ 30.) Thereafter, Wolf Creek allegedly failed to take corrective action on the deficiencies noted in the Bays Technical report. (*Id.* at ¶¶ 31, 32.)

On March 4, 2019, NCSWA provided notice of default against Wolf Creek for its work on the project. (*Id.* at ¶ 34.) Then, on March 19, Wolf Creek and NCSWA met to attempt to resolve the dispute regarding the contract through settlement. (*Id.* at ¶¶ 35, 36.) The result of this meeting was a Settlement Agreement and Release (the "Settlement Agreement"). (*Id.* at ¶ 37.) As consideration for a release, Wolf Creek agreed to a number of corrections that NCSWA wanted made to the project. (*Id.* at ¶ 38.) These corrections, however, needed to be made "within 90 days from the date of [the] Agreement, or such other date if mutually agreed by the parties." (*Id.* at ¶ 39.) As consideration for the settlement agreement, NCSWA agreed to waive its right to liquidated damages. (*Id.* at ¶ 40.) Under this Settlement Agreement, Wolf Creek agreed to a deadline of August 12. 2019 to complete its obligations. (*Id.* at ¶ 42.)

Wolf Creek failed to fulfill its obligations by August 12. (*Id.* at ¶ 43.) Among other things, NCSWA alleges that Wolf Creek improperly installed a leachate tank; never ground and grouted cracks underneath the cantilever concrete slab; and failed to notify NCSWA in advance of hiring an independent company to install crack monitors. (*Id.* at ¶¶ 44–50.) On October 1, 2019,

NCSWA notified SureTec concerning Wolf Creek's breach of the Performance Bond.   (*Id.* at ¶ 52.)   On October 3, SureTec responded to NCSWA's notification, in which it relied on Wolf Creek's disputing NCSWA's allegations and ongoing litigation to deny its performance obligations under the Performance Bond.   (*Id.* at ¶¶ 53–54.)

Wolf Creek initiated this action by filing a complaint in this Court on September 18, 2019.   (ECF No. 1.)   NCSWA filed its answer and counterclaim against Wolf Creek on December 9, 2019.   (ECF No. 15.)   Subsequently, and by leave of the Court, NCSWA filed an amended counterclaim, naming both Wolf Creek and SureTec as counterdefendants.   (ECF No. 26.)   The Amended Counterclaim asserts six claims: (1) Declaratory Judgment against Wolf Creek; (2) Breach of Contract against Wolf Creek; (3) Breach of the Settlement Agreement, in the alternative, against Wolf Creek; (4) Breach of the Performance Bond against SureTec; (5) Violations of the West Virginia Unfair Trade Practices Act against SureTec; and (6) Common Law Bad Faith against SureTec.   (*Id.*)

Wolf Creek filed the pending Partial Motion to Dismiss on February 26, 2020.   (ECF No. 30.)   NCSWA filed its response on March 11.   (ECF No. 36.)   Wolf Creek timely filed its reply on March 18.   (ECF No. 39.)   As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.    DISCUSSION

Wolf Creek moves this Court to dismiss Counts I and II of the Amended Counterclaim. In support of this motion, Wolf Creek argues that NCSWA has failed to allege sufficient facts to support its claim that the Settlement Agreement is voidable.   (ECF No. 31 at 3.)   As to Count II, Wolf Creek argues that NCSWA has similarly failed to allege sufficient facts to support its claim for liquidated damages under the contract, as NCSWA expressly waived its rights to that claim

under the Settlement Agreement.   (*Id.* at 6.)   The Court takes these issues up in order.

A.      *Count I – Declaratory Judgment*

In its Amended Counterclaim, NCSWA asks this Court for a declaration that, as the result of Wolf Creek's several material breaches, the Settlement Agreement is "voidable" at the discretion of NCSWA.   (ECF No. 26 at ¶ 69.)   Alternatively, NCSWA requests that this Court declare Wolf Creek is in material breach of the Settlement Agreement.   (*Id.* at ¶ 70.)

Wolf Creek argues for the dismissal of Count I of the Amended Counterclaim on the grounds that NCSWA has failed to allege any facts that would support its claim that the Settlement Agreement is voidable. [1]   (ECF No. 31 at 3.)   Wolf Creek asserts that the Settlement Agreement is a valid contract and that the language of the Settlement Agreement does not establish that NCSWA's release and waiver of claims against Wolf Creek were conditional.   (*Id.*)   Finally, Wolf Creek argues that even if it is found to have breached the Settlement Agreement, a breach alone does not "void" the contract.   (*Id.* at 5–6.)   Rather, Wolf Creek argues that the proper remedy in the event of a breach is to put the nonbreaching party "in the same position as if the contract had not been broken."   (*Id.* at 6.)

NCSWA counters that it has sufficiently pled an action for declaratory judgment because it has alleged "in great detail" that Wolf Creek had materially breached the Settlement Agreement. (ECF No. 36 at 5.)   Moreover, NCSWA argues that Wolf Creek has not cited any authority that would permit the Court to dismiss a "well-pled declaratory action."   (*Id.*)   Finally, NCSWA

---

[1] NCSWA notes that while using the term "voidable" in the Amended Counterclaim, the legal theory advanced under both Counts I and II is that of termination.   (ECF No. 36 at 6, n.2.)   NCSWA also declares itself "ready, willing, and able" to amend the Amended Counterclaim to replace the word "voidable" with "termination."   (*Id.*)   This Court also notes that NCSWA has also pled in the alternative, namely for a declaration that Wolf Creek is in material breach of the contract.   (ECF No. 26 at ¶ 70.)   Wolf Creek appears to have premised a significant portion of its argument on the theory that the contract is not "voidable."   (*See* ECF No. 31 at 5.)

6

argues that Wolf Creek overlooks a "time-is-of-the-essence" provision in the Settlement Agreement, and that based on a breach of these provisions, the aggrieved party is entitled to terminate the contract. (*Id.* at 6, 7.)

To begin, Count I asserts a claim for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.   As relevant here, this section establishes the following:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).   The Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant."   *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted)[2].   A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."   *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Accepting NCSWA's well-pleaded factual allegations as true, this Court finds that NCSWA has sufficiently pled an action for declaratory judgment.   NCSWA has alleged a contractual relationship with Wolf Creek and that Wolf Creek failed to perform certain obligations as required by the agreement between the parties.   (ECF No. 26 at ¶¶ 9, 25, 38–39, 42–50.)   In particular, NCSWA has alleged that Wolf Creek failed to timely and properly complete certain

---

[2] While the parties' briefing is not entirely clear on this point, the Court does have the authority to dismiss actions for declaratory judgment at this stage if the action fails to state a claim upon which relief may be granted.   *See, e.g.*, *Smith v. West Virginia Univ. Bd. of Governors*, Civ. Action No. 2:11-cv-00430, 2012 WL 1111440 (S.D. W. Va. Mar. 30, 2012).

obligations under the parties' Settlement Agreement, including improperly installing a leachate tank; failing to correct exposed column base plates and anchor bolts; failing to ground and grout cracks beneath a cantilever concrete slab; and failed to provide NCSWA various reports, recommendations, conclusions, or processes from independent companies engaged to install monitors.   (*Id.* at ¶¶ 44–50.)   As a result of these alleged failures, NCSWA has asked this Court for a declaration that the contract is "voidable" by NCSWA at its discretion or, in the alternative, that Wolf Creek has materially breached the Settlement Agreement.   (*Id.* at ¶ 70.)   Not only is this an appropriate use of a declaratory judgment action but NCSWA has also sufficiently pled its counterclaim such that it survives Wolf Creek's motion to dismiss.

As to Wolf Creek's argument that dismissal is warranted because NCSWA requested a declaration that the contract is "voidable," a party is not required to plead any specific legal theories to state a valid claim for relief.   *See Executive Risk Indem., Inc. v. Charleston Area Medical Center, Inc.*, 681 F.Supp.2d 694, 723 (S.D. W. Va. 2009).   Rather, under Rule 12(b)(6), dismissal is generally precluded if a plaintiff is plausibly entitled to relief under any legal theory based on the facts alleged.   *Id.   See also Flagstar Bank, FSB v. First Citizens Bank & Trust Co., Inc.*, No. 3:09–876–CMC, 2009 WL 1707941, at *2 (D.S.C. June 17, 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005); *Thomson v. Washington*, 362 F.3d 969, 970–71 (7th Cir. 2004); *Haddock v. Bd. of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985) (stating that a complaint "should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory").   Here, the well-pleaded facts alleged by NCSWA support a legal theory that the contract may be terminated.

Even while NCSWA erroneously inserted the term "voidable" in its amended counterclaim, the facts alleged would plausibly support a legal theory of termination.

NCSWA has pled sufficient factual allegations to support its action for declaratory judgment.   Therefore, Wolf Creek's motion to dismiss is **DENIED** as to Count I.

### B.  Count II – Breach of Contract

Count II asserts a claim for breach of contract against Wolf Creek.   (ECF No. 26 at 10.) Wolf Creek argues that Count II is subject to dismissal because NCSWA is not entitled to liquidated damages under the original contract because NCSWA waived that right to recovery by entering the Settlement Agreement.   (ECF No. 31 at 6.)   Furthermore, Wolf Creek argues that, even if it did breach the Settlement Agreement, NCSWA may not terminate the Agreement because the parties included in it a liquidated damages clause that provides for the damages NCSWA seeks.   (*Id.* at 7.)   Wolf Creek asserts that the inclusion of the liquidated damages clause in the Settlement Agreement effectively nullifies the "time-is-of-the-essence" clause upon which NCSWA relies.   (ECF No. 39 at 5.)

NCSWA, meanwhile, argues that Count II is not subject to dismissal because it required timely completion of the project as a condition of the Settlement Agreement with the inclusion of a "time-is-of-the-essence" clause.   (ECF No. 36 at 6.)   NCSWA further argues that even if the intent of the parties cannot be ascertained through the plain language of the Settlement Agreement alone, this Court should not dismiss Count II until enough discovery has been conducted so as to determine the intent of the parties.   (*Id.* at 8–9.)

Regarding liquidated damages, the parties' Settlement Agreement reads as follows:

5.     Liquidated Damages

In consideration for the work Wolf Creek agreed to perform under this Agreement, [NCSWA] will waive any claim to liquidated damages against Wolf Creek under the Contract.

Notwithstanding, [NCSWA] and Wolf Creek agree that time is of the essence in the performance of this Agreement, and that [NCSWA] will suffer damage for each and every day that the construction of the Project is not finished before 90 days from the date of this Agreement, or such other date if mutually agreed by the parties. Accordingly, $500 per day liquidated damages will be drawn against the withheld retainage as outlined in subsection 4(c) of this Agreement for any delay in failing to complete the work outlined in section 2 of this Agreement.

(ECF No. 26-1, Exhibit E at 6.)

In West Virginia, "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden*, 172 S.E.2d 126 (W. Va. 1969). Syl. pt. 2, *Orteza v. Monongalia County Gen. Hosp.*, 318 S.E.2d 40 (W. Va. 1984). S*ee also*, Syl. pt. 3, *Bennett v. Dove*, 277 S.E.2d 617 (W. Va.1981) ("'It is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning."); Syl. pt. 1, *Cotiga Dev. v. United Fuel Gas Co.*, 128 S.E.2d 626 (W. Va. 1962) ("A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.").

"Whether or not time is of the essence of a contract is determined from the language used in the instrument and the circumstances surrounding it.   The principle object is to determine the intent of the parties."   *Creasy v. Tincher*, 173 S.E.2d 332, 334 (W. Va. 1970).   Furthermore, the West Virginia Supreme Court of Appeals has held that "[i]f the parties would make time of the essence, they should so stipulate in the contract.   And even when such contract does make time of the essence, it may be waived by indulgence or subsequent contract of the parties."   *Bailey v. Savage*, 236 S.E.2d 203, 206 (W. Va. 1977) (quoting Syl. pts. 2, 3, *Collins v. Thomas*, 105 S.E.

897 (W. Va. 1921)).   Where the intent of the parties establishes that time is of the essence, "a delay in performance beyond the period specified in the contract, unless caused by the other party or waived by such party, will constitute a breach of the contract, entitling the aggrieved party to terminate it."   Syl. pt. 4, *Waddy v. Riggleman*, 606 S.E.2d 222 (W. Va. 2004).   *See also* Syl. pt. 2, *Elkins Manor Ass. v. Eleanor Concrete Works, Inc.*, 396 S.E.2d 463 (W. Va. 1990).

Wolf Creek argues that the inclusion of the liquidated damages provision above essentially invalidates the time-is-of-the-essence clause such that NCSWA cannot maintain its breach of contract claim set forth in Count II.   (ECF No. 39 at 5.)   In support of its position, Wolf Creek directs the Court to *Vecellio v. Bopst*, 6 S.E.2d 708 (W. Va. 1939).   In *Vecellio*, the West Virginia Supreme Court of Appeals held that where "[a] written agreement which contains both a clause providing that time shall be considered of the essence of the contract and one providing for liquidated damages in the event of delayed performance, the two provisions not being consistent, is not to be construed as making the time of performance of the essence of the contract."   Syl. Pt. 3, *id.* at 708.   While Wolf Creek asserts that this rule is "well established" in West Virginia, this Court has found no other support for or citations to this decision and the specific issue in the state.

Yet, this Court finds before it several items that differentiate the current matter from *Vecellio*.   First, the *Vecellio* Court found "prevailing material provisions" of the sub-contract at issue there to contain items that were "entirely inconsistent" with the time-of-the-essence clause. *Id.* at 711.   Among these was the agreement between the parties that the work would be "substantially completed" by the deadline, a phrase that was not defined and "not the nature of a contract in which time is of the essence."   *Id.*   No such phrase applies to the Settlement Agreement here; instead, pursuant to the Settlement Agreement, Wolf Creek was to complete the

entirety of the work by the deadline.  (*See* ECF No. 26–1, Ex. E at 4.)   Next, the Settlement Agreement contains numerous other references that are not "entirely inconsistent" with a time-is-of-the-essence provision, which, when read in conjunction with the liquidated damages clause, renders the intent of the parties far from clear.   (*Id.*, Ex. E at 4, 6.)

Furthermore, the Court is unable to locate any language in the liquidated damages provision that establishes it as the exclusive remedy for all damage claims arising under the Settlement Agreement.  *See VanKirk v. Green Const. Co.*, 466 S.E.2d 782, 787 (W. Va. 1995). While the liquidated damages provision clearly applies to any delay on the completion of the work enumerated in the Settlement Agreement, these damages appear to be separate from the damages arising from the original delay in completing the project under the contract.   *See id.* ("It generally is held that a liquidated damage clause for delay in completing contract work does not preclude the injured party from recovering compensatory damages under the contract unless the liquidated damage clause expressly limits the right to such other damages.")   The Settlement Agreement seems to confirm as much: "Further, nothing in this Release prevents [NCSWA] from exercising any and all rights arising from a breach of this Agreement."   (ECF No. 26–1, Ex. E at 7.)

At this early stage, the Court finds that NCSWA has plausibly pled a claim for a breach of contract.   Therefore, Wolf Creek's motion to dismiss Count II of the Amended Counterclaim is **DENIED.**

## *IV.   CONCLUSION*

For the reasons stated above, Wolf Creek's Partial Motion to Dismiss, (ECF No. 30), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 18, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

13